Robert RICHARDS, Plaintiff,

v.

**GENERAL MOTORS CORPORATION and General Motors Savings–Stock Purchase Program, Defendants.**

Robert W. CAMPBELL, Jr., Plaintiff,

v.

**GENERAL MOTORS CORPORATION and General Motors Savings–Stock Purchase Program, Defendants.**

Nos. 91–CV–10104–BC, 93–CV–10122–BC.

United States District Court, E.D. Michigan, N.D.

March 31, 1994.

Michael J. Forester, Saginaw, MI, Harry P. Gill, Bay City, MI and Jeffrey J. Endean, Saginaw, MI, for plaintiffs.

David M. Davis, Terence V. Page, Birmingham, MI and Francis S. Jaworski, Stuart R. Cohen, General Motors Corp., Detroit, MI, for defendants.

## *MEMORANDUM OPINION AND ORDER*

CLELAND, District Judge.

### I. INTRODUCTION

These consolidated cases are before the court on Plaintiffs' respective Motions in Support of Jury Demand. Also before the court is Defendants' Motion to Dismiss Count II of Plaintiff Campbell's original Complaint. For the reasons stated herein,

IT IS ORDERED that the Plaintiffs' respective Motions in Support of Jury Demand are denied, and

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Count II of Plaintiff Campbell's original Complaint is granted in part and denied in part. Specifically, the court holds that the portions of the Amended Complaint which assert an individual action for "breach of fiduciary duties" (¶¶ 43, 44, 45, and 46) are dismissed, pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.

### II. BACKGROUND

Plaintiffs are both former employees of defendant General Motors Corporation ("G.M."). As part of its various employee benefit plans covered by the Employee Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. § 1001 *et seq.*, G.M. offered a Savings–Stock Purchase Plan ("S–SPP" or "Plan"). Under the Plan, the plaintiffs could direct G.M. to withhold up to fifteen percent of their salaries to purchase G.M. stock and other investments under a myriad of different options (for a detailed version of the facts, see *Richards v. General Motors Corp.*, 991 F.2d 1227 (6th Cir.1993)).

Up to four times per year, employees were permitted to transfer existing funds between the stock-based investments, to alter the percentage of their salaries withheld for purchases, and to change the formula under which the withheld funds were divided to purchase stock-based investments. *Id.* at 1229. G.M. alleges that, with the cooperation of the local Plan Administrator, plaintiffs were able to "back-date" their investment transactions. This allowed plaintiffs to take advantage of the knowledge of how the market had performed before making their investment decisions (the functional equivalent of betting on a horse race *after* win, place, and show are announced). Both plaintiffs were terminated after G.M. discovered that they were making these retroactive investment decisions which, according to G.M., allowed them to make windfall profits.

Each of the plaintiffs has filed a Complaint and an Amended Complaint, asserting a cause of action against the defendants under various provisions of ERISA.[1] The Amend-

---

1. Plaintiff Richards' case was originally dismissed by this court on summary judgment. That decision was reversed and remanded by the Sixth Circuit in *Richards v. General Motors Corp.*, 991 F.2d 1227 (6th Cir.1993). Plaintiff Campbell, like Richards, worked at G.M. and was also terminated for allegedly defrauding the company by making "retroactive" investments in the Plan.

ed Complaints allege causes of action under ERISA involving the eligibility of each plaintiff to receive pension benefits from the Plan.

Plaintiff Richards' Amended Complaint includes two claims [2]: Count I—Breach of Fiduciary Duties (alleging that by their bad faith actions and omissions in terminating plaintiff and by unilaterally offsetting his non-forfeitable benefits in the S–SPP, the defendants breached their fiduciary duties under §§ 404(a) and 409 of ERISA, 29 U.S.C. §§ 1104(a) [3] and 1109 [4]); and Count III—Violation of § 510 of ERISA, 29 U.S.C. § 1140 [5] (unlawful interference with attainment of a benefit or retaliation for exercising a lawful right under a benefit plan).

Plaintiff Campbell's Amended Complaint, which is identical to Richards' Amended Complaint in several respects, alleges: Count I—Breach of Contractual Fiduciary Duties

---

After the remand order was issued, Campbell filed a complaint which is nearly identical to Richards' complaint. The two cases have been consolidated for discovery and trial.

**2.** The Amended Complaint actually asserts a third count (state law claim for violation of assets/conversion) which was voluntarily dismissed, with prejudice.

**3.** Section 404(a) of ERISA, 29 U.S.C. § 1104(a) provides: (a) Prudent man standard of care. (1) ... [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
   (A) for the exclusive purpose of:
      (i) providing benefits to participants and their beneficiaries; and
      (ii) defraying reasonable expenses of administering the plan;
   (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
   (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
   (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title or title IV.

**4.** Section 409(a) of ERISA (29 U.S.C. § 1109(a)) provides in pertinent part that:
   Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to

---

and Count III—Violation of § 510 of ERISA, 29 U.S.C. § 1140. [6]

## III. ISSUES

Two issues are before the court: 1) whether plaintiffs are entitled to a jury trial, under the Seventh Amendment, for their respective ERISA causes of action under 29 U.S.C. § 1132(a)(1)(B), § 1132(a)(2), or § 1132(a)(3) [7] and, 2) whether plaintiff Campbell's claim for Breach of Fiduciary Duties should be dismissed, pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. [8]

## IV. DISCUSSION

### A. JURY TRIAL UNDER ERISA

■ The Seventh Amendment provides that "[i]n Suits at Common law, where the

---

make good to such plan any losses to the plan resulting from each such breach. ...

**5.** Section 510 of ERISA (29 U.S.C. § 1140) provides in pertinent part that:
   It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provision of an employee benefit plan. ...

**6.** In addition, Campbell asserts a claim (Count II—Violation of Sections 204 & 206 of ERISA) which has not been asserted by Richards.

**7.** The parties have narrowed the relevant battleground to these three sections.

**8.** Defendants' motion to dismiss is as to Count II of plaintiff Campbell's Original Complaint. That count was entitled "Breach of Fiduciary Duties." In his Original Complaint Campbell also pled, as a separate cause of action, a claim entitled "Breach of Contract." See Original Complaint 5, Count I. Under Count I of his Amended Complaint, which is entitled "Breach of Contractual Fiduciary Duties," plaintiff combines each of the allegations originally pled in Counts I and II of his Original Complaint. Because the motion to dismiss was filed only as to the "Fiduciary Duties" count (i.e. Count II of the Original Complaint), the court will consider it as attacking only that portion of the Amended Complaint which seeks relief for breach of "Fiduciary Duties." See Amended Complaint ¶¶ 43, 44, 45, and 46. This court does not consider the propriety of the those sections of Count I of the Amended Complaint which pertain solely to plaintiff's "Breach of Contract" claim. See ¶¶ 37–42.

value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend. VII. Under the Seventh Amendment, the right to a jury trial exists only in "suits in which *legal* rights ... [are] recognized and determined, in contradistinction to those where *equitable* rights alone ... [are] recognized, and equitable remedies ... [are] administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989) (quotation omitted). Most courts which had previously considered this issue have held that no right to a jury trial exists under ERISA claims in general. See *Crews v. Central States, Southeast & Southwest Areas Pension Fund*, 788 F.2d 332, 338 (6th Cir. 1986) (citing all of the other circuit courts which had rejected the notion that a jury trial existed in an action for benefits under Sec. 502(a)(1)(B)).[9] The reasoning applied was that such suits for pension benefits were grounded in the law of trust and thus were equitable in nature. In a recent grouping of cases, the Supreme Court has provided guidance for determining whether a party is entitled to a jury trial under the Seventh Amendment. In *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), the Court held that there was a right to a jury trial in a section 301 Labor Management Relations Act ("LMRA") claim against a union for breach of its fair duty of representation. Although *Terry* was an LMRA case, the Court has determined that § 301 of that Act is analogous to § 502(a)(1)(B) of ERISA; therefore, courts have applied *Terry's* rationale to ERISA actions. The *Terry* Court considered two issues in determining whether a trial by jury was to be afforded under the Seventh Amendment: (1) the nature of the issues involved (*vis-a-vis* the eighteenth century actions brought in English courts prior to the merger of law and equity) and (2) the nature of the remedy sought—legal or equitable. The second inquiry is "more important" to Seventh Amendment analysis. *Terry*, 494 U.S. at 565, 110 S.Ct. at 1345 (*citing Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989)).

In *Terry*, the plaintiffs were required to prove that their employer violated § 301 of the LMRA by breaching the collective-bargaining agreement and that the union breached its duty of fair representation. The plaintiffs sought compensatory damages in the form of back pay and benefits. Because the nature of the hybrid claim was both equitable and legal, and because the nature of the remedy sought is the crucial factor under the Seventh Amendment, the Court focused on the recovery sought. Due to the fact that the relief sought was in the form of money damages only (including back pay) the Court determined that the action was a legal one in which a jury trial is afforded under the Seventh Amendment.

Shortly after the Supreme Court's decision in *Terry*, the Court decided *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In that case a Texas employee allegedly was fired so that his pension would not vest. He sued his previous employer for wrongful discharge seeking compensatory, mental anguish, and punitive damages. The Texas Supreme Court held that the action was not preempted by ERISA because the plaintiff was not seeking lost pension benefits, but was instead seeking legal damages. The Supreme Court reversed, holding that the case was indeed preempted under § 514(a) [29 U.S.C. § 1144(a)] of ERISA. At the very end of the Court's opinion, Justice O'Connor (writing on behalf of the Court), stated:

> Not only is § 502(a) [29 U.S.C. § 1132(a)(1) and (3)] the exclusive remedy for vindicating § 510 protected rights, there is no basis in § 502(a)'s language for

---

9. It is significant to note that, despite acknowledging the general rule (and cases holding) that litigants are not entitled to a jury trial in an ERISA action, the *Crews* court determined that those cases have "limited applicability" inasmuch as the action before it was not a "traditional ERISA action." *Id.* at 338. The court went on to perform an analysis under the Seventh Amendment and ultimately concluded that the action was essentially one for restitution (an equitable form of relief) and, therefore, no right to a jury trial existed under the Seventh Amendment. *Crews*, as well subsequent cases from this circuit which have applied traditional Seventh Amendment analysis to determine whether or not a jury trial should be afforded in an ERISA action, are discussed more thoroughly at pp. 1333–34, *infra*.

limiting ERISA actions to only those which seek "pension benefits." *It is clear that the relief requested here [compensatory, mental anguish, and punitive damages] is well within the power of federal courts to provide.* Consequently, it is no answer to a preemption argument that a particular plaintiff is not seeking recovery of pension benefits.

*Id.,* 498 U.S. at 145, 111 S.Ct. at 486 (emphasis added).

The above-cited dicta from *Ingersoll–Rand,* read together with the Court's decision in *Terry,* lead to a plethora of decisions by various district courts holding that ERISA sometimes affords plaintiffs a right to a jury trial. *See e.g. International Union, United Auto., etc. v. Midland Steel Products Company,* 771 F.Supp. 860 (N.D.Ohio 1991) (*Ingersoll–Rand* conclusively establishes the availability of legal remedies—and thus a right to a jury trial—under ERISA); *McDonald v. Artcraft Elec. Supply Co.,* 774 F.Supp. 29 (D.D.C.1991) (*Ingersoll–Rand* provides powerful support for the proposition that Congress intended for ERISA to provide a statutory right to a jury trial); *Blue Cross and Blue Shield of Alabama v. Lewis,* 753 F.Supp. 345 (N.D.Ala.1990) (fact that *Ingersoll–Rand* now recognizes tort-like damages in ERISA cases leads inexorably to the right to a jury trial thereunder); *see also Steeples v. Time Ins. Co.,* 139 F.R.D. 688 (N.D.Okla.1991) (jury trial was afforded in action to recover money damages for insurer's failure to pay medical costs because employees were not seeking reinstatement of policy or any type of continuing coverage but money damages alone).

Other courts, however, read *Ingersoll–Rand* differently. *See e.g. O'Neil v. Gencorp, Inc.,* 764 F.Supp. 833 (S.D.N.Y.1991) ("Had Justice O'Connor intended, as plaintiff's claim, that [her analysis in *Ingersoll–Rand* of § 510 of ERISA] was overruling the considerable amount of federal case law barring punitive and extracontractual damages under ERISA[,] . . . she undoubtedly would have so stated"); *Gaskell v. Harvard Co-op. Society,* 762 F.Supp. 1539, 1544 (D.Mass.1991) ("[H]ad the Supreme Court intended to expand the realm of potential relief available

under ERISA . . . it would have done so explicitly. Such a departure from precedent likely would not have been accomplished in a single sentence, in dicta, at the close of an opinion focused exclusively on [preemption]"); *see also* Judge Feikens' opinion in *Sprague v. General Motors Corp.,* 804 F.Supp. 931 (E.D.Mich.1992) (". . . I am unable to imply any suggestion by the Supreme Court [in *Terry* or *Ingersoll–Rand*] that an action under ERISA can be an action at law thereby granting the right to a jury trial").

■ Recently, the Supreme Court held that the "appropriate equitable relief" allowed by § 502(a)(3) of ERISA (29 U.S.C. § 1132(a)(3)) included only typical remedies available in equity, and not "legal remedies" like compensatory damages or monetary relief:

Petitioners maintain that the object of their suit is "appropriate *equitable* relief" under § 502(a)(3). They do not, however, seek a remedy traditionally viewed as "equitable," such as injunction or restitution. (The Court of Appeals held that restitution was unavailable, see [*Mertens v. Hewitt Associates*] 948 F.2d [607], at 612 [ (9 Cir. 1991) ], and petitioners have not challenged that.) Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages, are of course, the classic form of *legal* relief. *Curtis v. Loether,* 415 U.S. 189, 196, 39 L.Ed.2d 260, 94 S.Ct. 1005 [1009] (1974); *Teamsters v. Terry,* 494 U.S. 558, 570–571, 108 L.Ed.2d 519, 110 S.Ct. 1339 [1347–48] (1990); D. Dobbs, Remedies § 1.1, p. 3 (1973). And though we have never interpreted the precise phrase "other appropriate equitable relief," we have construed the similar language of Title VII of the Civil Rights Act of 1964 (before its 1991 amendments)—"any other equitable relief as the court deems appropriate," 42 U.S.C. § 2000e–5(g) [42 U.S.C.S. § 2000e–5(g) ]—to preclude "awards for compensatory or punitive damages." *United States v. Burke,* 504

U.S. ——, ——, 119 L.Ed.2d 34, 112 S.Ct. 1867 [1873] (1992).

*Mertens v. Hewitt Associates,* —— U.S. ——, ——–——, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161, 169–70 (1993). This holding vindicates those courts which rejected the notion that the dicta in *Ingersoll–Rand* somehow expanded the potential relief which had hitherto been allowed under § 1132(a) of ERISA. *Accord, Spinelli v. Gaughan,* 12 F.3d 853, n. 3 (9th Cir.1993) ("We must deem [the above-quoted language from *Ingersoll–Rand* ], which was unnecessary to the result of [that court's holding] in any event, superseded by *Mertens* "). This court is in agreement with those courts which have held that the Supreme Court did not, via the above-cited dicta in *Ingersoll–Rand,* open the door to "new" damages under ERISA (which, up until then, had been rejected—as previously stated—by other circuit courts). The court recognizes that this "choice of sides" is easily made in light of the Supreme Court's decision in *Mertens,* which once and for all puts an end to the debate.

With the broad historical background now behind it, the court must forge into the narrower issue of whether or not plaintiffs in the instant case are entitled to a jury trial for their ERISA claims. It is not disputed that the six well-crafted provisions delineated under 29 U.S.C. § 1132(a) [sec. 502(a) of ERISA] provide for the exclusive remedies for a cause of action under ERISA. *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 146–47, 105 S.Ct. 3085, 3092–93, 87 L.Ed.2d 96 (1985). However, it is unclear (as neither plaintiff has bothered to so specify), exactly which—or how many—of these individual provisions plaintiffs rely upon to support their ERISA claims. In other words, plaintiffs have not identified which procedural vehicles are being utilized to transport their substantive ERISA rights into this court. This deficiency notwithstanding, the court will analyze the relevant provisions of 29 U.S.C. § 1132(a) separately to determine whether, under any section therein, plaintiffs should be afforded a right to a jury trial under the Seventh Amendment.[10]

### 29 U.S.C. § 1132(a)(1)(B)

■ Under 29 U.S.C. § 1132(a)(1)(B) a participant or beneficiary may bring a civil action:

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

As previously mentioned, neither plaintiff has stated whether or not he is relying on this section of ERISA to enforce rights which were allegedly violated by the defendants. Count I of each of the amended complaints alleges breach of various "fiduciary duties" owed by the defendants. An action to recover for a breach of fiduciary duty is different from an action to recover plan benefits under § 1132(a)(1)(B) of ERISA. *Anweiler v. American Elec. Power Service Corp.,* 3 F.3d 986, 992 (7th Cir.1993) (*citing McMahon v. McDowell,* 794 F.2d 100 (3d Cir.), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986)). When a plaintiff's claim is for breach of a fiduciary duty, it must instead be brought under either 29 U.S.C. § 1132(a)(2), or possibly under § 1132(a)(3).[11] Thus, plaintiffs' respective claims for breach of fiduciary duties are not being asserted under § 1132(a)(1)(B); therefore, no right to a jury trial arises under that section for these claims.

■ Plaintiffs also assert an action under section 510 of ERISA (29 U.S.C. § 1140), which provides in pertinent part that:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan. . . .

---

10. As stated, the parties have narrowed the relevant battleground under 29 U.S.C. § 1132(a) to the following three sections:

§ 1132(a)(1)(B), § 1132(2), § 1132(3). This court will consider the propriety of a jury trial only under these sections only.

11. The circuit courts are split on the issue of whether an individualized action for breach of fiduciary duty lies under § 1132(a)(3). The propriety—or lack thereof—of asserting such a claim is discussed thoroughly at pp. 1336–41, *infra.*

*See* 29 U.S.C. § 1140. The provisions of 29 U.S.C. § 1132(a) are applicable in the enforcement of section § 1140. *Id.* Again, neither plaintiff specifies *which* procedural provision of § 1132(a) that he is relying upon to assert his § 1140 substantive rights claim. Accordingly, a review of the amended complaints, which contain identical language, is required. Both plaintiffs allege that "[b]y their willful, malicious and bad faith actions and omissions ..., Defendants unlawfully terminated [them] and rescinded, altered and/or reduced benefits to which [they] were entitled under [the] S–SPP." This claim can be broken into two parts: 1) that defendants unlawfully terminated plaintiffs under 29 U.S.C. § 1140 (§ 510 of *ERISA* ), and 2) that defendants improperly reduced the benefits which plaintiffs were entitled to under the terms of *the plan.*

■ Section 1132(a)(1)(B) of ERISA contemplates an action for benefits due "under the terms of the plan." Accordingly, the first component of plaintiffs' respective claims under § 1140—each of which allege a violation of ERISA and not the plan itself— cannot be brought under § 1132(a)(1)(B), and thus no right to a jury trial attaches under that section.[12] The second aspect of plaintiffs' claims under this section, alleging a violation of the plan itself, are properly brought under § 1132(a)(1)(B).

In *Daniel v. Eaton Corp.,* 839 F.2d 263 (6th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988), the court stated that:

> Although there may be actions under ERISA in which a jury trial is proper, in actions for recovery of benefits under 502 [29 U.S.C. § 1132(a) ], 'there is no right to a jury trial.'

*Id.* at 268 (citation omitted). Despite plaintiffs' arguments to the contrary, it is clear from the express language contained within the respective amended complaints that their claims under § 1140 are for "... benefits to which [they] were entitled to under [the plan]." *See* Campbell's Amended Complaint

¶ 51; Richards' Amended Complaint ¶ 43. Accordingly, plaintiffs are not entitled to a jury trial for these claims. *Daniel v. Eaton Corp.,* 839 F.2d at 268.

■ Even assuming, *arguendo,* that their § 1140 claims could somehow be construed as something other than actions "to recover benefits" under § 1132(a)(1)(B), plaintiffs would still not be entitled to a jury trial under that section. The pin upon which plaintiffs' respective claims for a jury trial hinges is that they are seeking legal—as opposed to equitable—relief. However, extracontractual damages, such as some of the damages sought in the instant case[13], are simply not available in an action by an individual beneficiary under § 502(a)(1)(B). *Harsch v. Eisenberg,* 956 F.2d 651, 656 (7th Cir.), *cert. denied* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992).

Plaintiffs rely heavily on the above-quoted language from *Daniel* (i.e. that "there may be actions under ERISA in which a jury trial is proper") to support their argument that a jury trial may lie under § 502(a)(1)(B). This court disagrees with plaintiffs' reading of *Daniel.* That case involved a claim under § 502(a)(1)(B). To the extent that the *Daniel* court was commenting on the propriety of jury trials under ERISA, it was not doing so with regard to 502(a)(1)(B). In other words, the dicta from *Daniel* could at best be viewed as an intent to leave for another day the then-unsettled question of whether an individual had a right to a jury trial pursuant to one of the *other sections* within § 1132(a) (e.g. § 1132(a)(3)). This reading of *Daniel* (as holding that, irrespective of the relief sought, jury trials are simply not available under § 1132(a)(1)(B)), is consistent with the interpretation rendered by other circuit courts. *See e.g. Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir.1980) *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981) (no right to a jury trial exists in an action brought by a beneficiary

---

12. These claims can, however, be properly asserted under § 1132(a)(3). For the court's analysis on why a jury trial under that section is unavailable, see pp. 1334–36, *infra.*

13. Plaintiffs seek, *inter alia,* compensatory damages for future losses as a result of the allegedly wrongful discharge.

under 29 U.S.C. § 1132(a)(1)(B)); *In re Vorpahl*, 695 F.2d 318, 322 (8th Cir.1982) (notwithstanding that monetary relief was sought, no right to a jury trial existed under § 1132(a)(1)(B)); *Chilton v. Savannah Foods & Industries, Inc.*, 814 F.2d 620 (11th Cir. 1987); *see also Pane v. RCA Corp.*, 868 F.2d 631, 636 (3d Cir.1989) (because § 1132(a)(1)(B) claims for benefits are equitable in nature plaintiff was not entitled to a jury trial).

This court recognizes Judge Joiner's holding in *Stamps v. Michigan Teamsters Joint Council No. 43*, 431 F.Supp. 745 (E.D.Mich. 1977), that actions brought under 29 U.S.C. § 1132(a)(1)(B) may be heard by a jury. This holding, which has been deemed "flawed" by other circuit courts that have considered it [14], was noted by the Sixth Circuit in *Crews v. Central States, Southeast & Southwest Areas Pension Fund*, 788 F.2d 332 (6th Cir.1986). *Crews* "recognized the conflict between *Stamps*, which allowed a jury for suits at law under section 502, and several other cases from other circuits categorically denying the right to a jury for all section 502 actions." *Crews*, 788 F.2d at 338. The *Crews* court nevertheless determined that the cases denying a jury had "limited applicability in light of the fact that Crews' action was not a traditional ERISA action within the parameters of 29 U.S.C. § 1132." *Id.* at 338. The court went on to consider whether the action was legal or equitable in nature under the Seventh Amendment. The ultimate holding was that Crews' claim was an equitable action for restitution and thus that there was no right to a jury trial.

Although its individual conclusion was innocuous, *Crews* is significant for its approach. By conducting an analysis to determine whether the claim was "legal" (to which the Seventh Amendment right to a jury trial attaches), *vis-a-vis* "equitable" (wherein no right to a jury trial is afforded), the court implicitly recognized that a right to a jury

trial *may*—at least under some circumstances—be afforded to an ERISA plaintiff in an action under § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)).

In *Bair v. General Motors Corp.*, 895 F.2d 1094 (6th Cir.1990), the Sixth Circuit implicitly reaffirmed its approval of the *Crews* technique to determine whether or not a plaintiff is entitled to a jury trial in an ERISA action. In *Bair* the court once again applied traditional Seventh Amendment analysis to determine whether plaintiff was entitled to a jury trial on his ERISA claims. Because the plaintiff sought equitable (and not legal) relief, no right to a jury trial was afforded under the Seventh Amendment.

Although, as stated above, it is not necessary to this court's ruling in the instant case, it appears that the courts which read § 1132(a)(1)(B) as not affording legal relief (and thus not affording the right to a jury trial under that section) have reached the correct result. In the event that damages are, as several other courts have held, unavailable under § 1132(a)(1)(B), then the equitable nature of the relief is dispositive of the issue. *See e.g. Spinelli v. Gaughan*, 12 F.3d 853, 857 (9th Cir.1993) ("... [T]he Supreme Court has told us four times that the nature of the remedy is more important for Seventh Amendment purposes than the nature of the right. Where, as here, the two conflict, we conclude that the equitable nature of the relief is dispositive....").[15] Therefore, even if their § 1132(a)(1)(B) claims could somehow be construed as seeking legal relief, plaintiffs' joint demand for a jury would fail, as there is simply no right (either statutory or constitutional) to a jury trial under that section of ERISA.

## 29 U.S.C. § 1132(a)(2)

■ This section allows a cause of action to be brought by the Secretary, participant, beneficiary, or fiduciary for breach of fiduciary duty under 29 U.S.C. § 1109 (§ 409 of

---

14. *See In re Vorpahl*, 695 F.2d 318, 321 (8th Cir.1982); *Calamia v. Spivey*, 632 F.2d 1235, 1237 (5th Cir.1980); *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820, 829 (7th Cir.1980) *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

15. *See also Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) ("The Seventh Amendment [applies] to actions enforcing statutory rights, and requires a jury trial upon demand, *if the statute creates legal rights and remedies*, enforceable in an action for damages in the ordinary courts of law").

ERISA). In *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court held that § 1109(a) provides relief only for a *plan*, and not for *individual participants. Id.* at 140–44, 105 S.Ct. at 3089–91. The Court noted that "... the relevant fiduciary relationship ... [is] characterized at the outset [of § 1109] as one 'with respect to a plan,' " and the liability of a fiduciary is to reimburse the plan, not the individual participants. *Id.* at 140, 105 S.Ct. at 3089; *see also Richards v. General Motors Corp.*, 991 F.2d 1227 (6th Cir.1993). In their respective complaints, plaintiffs allege that, due to their breaches of various fiduciary duties owed to them, defendants are liable to *plaintiffs* for damages. Thus their claims are not proper under this section as they are not claims on behalf of the plan. Since plaintiffs have not stated a claim under 29 U.S.C. § 1132(a)(2), they are, *a fortiori*, not entitled to a jury trial thereunder.

**29 U.S.C. § 1132(a)(3)**

■ The remaining section within which plaintiffs' claims could potentially fall, as with the previous two sections, proves unavailing. 29 U.S.C. § 1132(a)(3) provides that a civil action may be brought—

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

In support of their argument that they are entitled to a jury trial under this section of ERISA, plaintiffs rely primarily on *Mc-Donald v. Artcraft Elec. Supply Co.*, 774 F.Supp. 29 (D.D.C.1991), where the court denied the defendant's motion to strike the plaintiff's jury demand. In that case, as in the instant case, plaintiff claimed that defendants violated 29 U.S.C. § 1140. The court noted that the closest common law analogue to a § 1140 action is a wrongful termination or breach of contract suit, which are traditionally legal (and not equitable) in nature. The court further noted that:

> *If a court can*, under ERISA, award traditional contract and tort remedies—including compensatory monetary relief—then the ERISA claim seeking such relief must be legal, not equitable.

*Id.* at 35 (emphasis added). Based on this reasoning, as well as on the rationale that the Supreme Court's dicta in *Ingersoll–Rand* (discussed, *supra* ) provides "powerful support" for the argument that Congress intended ERISA to provide a statutory right to a jury in such cases, the court held that plaintiffs were entitled to a jury trial.

The problem with the court's holding in *McDonald* is that its reasoning (along with the reasoning employed by several other courts) has been recently rejected by the Supreme Court's decision in *Mertens v. Hewitt Associates* where, as previously stated, the Court held that damages (i.e. legal relief) are not available for a violation of section 502(a)(3). A recent case decided by the Ninth Circuit illustrates the application of this principle.

In *Spinelli v. Gaughan*, 12 F.3d 853 (9th Cir.1993), the plaintiff sued pursuant to § 1140 on the basis that she was fired from her job as a bartender for exercising her rights under ERISA. Like the plaintiffs in the instant case, the plaintiff in *Spinelli* claimed that she had a right to a jury trial. The Ninth Circuit disagreed. In analyzing her claim under the Seventh Amendment, the court considered (i) the nature of the action and (ii) the nature of the remedy. *See id.* at 855 (*citing Teamsters Local 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990)). With regard to the first prong, the court analogized plaintiff's claim to a claim for retaliatory discharge. The nature of this action, the court ruled, is a legal claim. However, the inquiry did not end there because, "as the Supreme Court has [stated] four times, the nature of the remedy is more important for Seventh Amendment purposes than the nature of the right." *Id.* at 857. The court stated:

> We get a different answer ... in considering the nature of the remedy provided. By its terms, section 502—the remedies provision for section 510—provides only for equitable relief. Thus Subsection (A)

speaks exclusively about enjoining any practice which violates ERISA, 29 U.S.C. § 1132(a)(3)(A): Subsection (B) is even more explicit, providing only for 'other appropriate equitable relief,' 29 U.S.C. § 1132(a)(3)(B). The language is clear enough, but the Supreme Court last term removed any remaining doubt in *Mertens v. Hewitt Assocs.*, —— U.S. ——, ——, 113 S.Ct. 2063, 2069, 124 L.Ed.2d 161 (1993), which holds that damages are not available for a violation of section 502(a)(3).

*Id.* (footnote omitted). The court further held that, where the nature of the remedy and the nature of the right conflict, "... the equitable nature of the relief is dispositive, unless Congress lacks the power to so limit the remedies available of section 510." *Id.* However, Congress has the power to preempt a state law cause of action which was, in terms of its historical nature as well as the relief it provided, traditionally "legal." Indeed, "this is the very nature of the Supremacy Clause." *Id.* (footnote omitted).

In the instant case, as in *Spinelli*, this court must look foremost to the nature of the relief *available* (as opposed to the nature of the relief *sought*) under 29 U.S.C. § 1132(a)(3) to determine whether or not a jury trial is to be afforded pursuant to the Seventh Amendment. As stated, extracontractual compensatory damages are simply not available under § 1132(a)(3). *Mertens v. Hewitt Assocs.*, —— U.S. ——, ——–––——, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161, 169–70 (1993). Accordingly, plaintiffs are not entitled to a jury trial under that section for their claims for breach of fiduciary duties and violation of section 510 of ERISA.

To the extent that other courts (including the Sixth Circuit in *Warren v. Society National Bank*, 905 F.2d 975 (6th Cir.1990), *cert. denied*, 500 U.S. 952, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991)) have allowed extracontractual compensatory damages under § 502(a)(3), they are now overruled by the Supreme Court's holding in *Mertens* which, true to the plain language contained within the statute, precludes such damages from being awarded therein.

The Sixth Circuit will—in light of clarification from the Supreme Court on this issue— perhaps untangle the web through which the district courts in this circuit have been required to make their way. By analyzing the nature of the relief sought (as opposed to the remedies available), the *Crews* and *Bair* courts seemed to have placed their imprimatur on the notion that, at least in some circumstances, a jury trial should be afforded under §§ 502(a)(1)(B), (a)(2), or (a)(3) (29 U.S.C. §§ 1132(a)(1), (a)(2), or (a)(3)) of ERISA.[16] District courts have thus been compelled to wade through the damage sections of complaints to determine whether or not the relief sought was actually (as plaintiffs invariably claimed) "legal," or if it was in fact "equitable." *See e.g. Sprague v. General Motors Corp.*, 804 F.Supp. 931 (E.D.Mich. 1992) (plaintiffs asking G.M. to return to them monies allegedly retained improperly as the result of imposing co-payments and deductibles and reducing certain coverage were seeking restitution—equity—in its "most classic sense"); *see also Pegg v. General Motors Corp.*, 793 F.Supp. 284 (D.Kan. 1992).

The logical focus in determining whether a jury trial is to be afforded under the Seventh Amendment falls not on what relief is sought, but rather on what relief is available. If legal relief is unavailable under a particular section of ERISA, then a plaintiff cannot, irrespective of the relief he seeks, obtain a jury trial under that section.[17] This court holds that legal relief is not available under 29 U.S.C. §§ (a)(1)(B), (a)(2), and (a)(3) (§§ 502(a)(1)(B), (a)(2), and (a)(3) of ERISA). Because the nature of the relief is

---

**16.** As stated, these are the only sections of § 1132(a) considered by this court.

**17.** This rule, of course, presupposes Congress's power to limit the remedies available (and, concomitantly, the right to a jury trial) under a particular section of ERISA. As the Ninth Circuit recently stated, however, "[t]his is the nature of federal supremacy. Once Congress has chosen to preempt the state claim, it's free to give affected individuals a full federal claim, a claim providing only for remedies limited to equity, a damages claim only, or no claim at all. The Seventh Amendment ... does not stand in the way." *Spinelli v. Gaughan*, 12 F.3d 853, 858 (9th Cir.1993) (footnote omitted).

dispositive under the Seventh Amendment, there is no right to a jury trial under these sections.

## B. MOTION TO DISMISS CLAIM FOR BREACH OF FIDUCIARY DUTY

Defendants' motion to dismiss is only as to Count II (breach of "contractual fiduciary duties") of plaintiff Campbell's original Complaint.[18] The essence of defendants' motion is that a plaintiff cannot, as a matter of law, maintain an individual claim for an alleged breach of fiduciary duty imposed under ERISA §§ 404, 405 (29 U.S.C. §§ 1104, 1105). Defendants argue that the remedy for breach of "fiduciary duties" (as defined by §§ 404 and 405) is provided exclusively under § 409 (29 U.S.C. § 1109) which, as previously stated, permits actions for breach of fiduciary duty only on behalf of the plan, and not individuals personally. This section is explicitly mentioned in § 502(a)(2) of ERISA. Because Campbell has not specified which provision within § 502 of ERISA (29 U.S.C. § 1132(a)) he is relying on for his claim of breach of "fiduciary duties," it is necessary for this court to again look to the individual sections within § 1132(a) to determine whether, under any of those sections, he has stated a claim upon which relief can be granted. The three sections that may be applicable are 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), and 1132(a)(3).[19] Analysis of an individual claim for breach of fiduciary duties is straightforward under these first two sections. Such a claim by way of the third section, however, is more complicated, as various courts of appeal disagree on the issue of whether or not an individual claim for breach of fiduciary duty can be brought under § 1132(a)(3).

### 29 U.S.C. § 1132(a)(1)(B)

■ As stated previously, an action to recover for breach of "fiduciary duty" is different from an action to recover plan benefits under § 502(a)(1)(B) of ERISA. *Anweiler v. American Elec. Power Service Corp,* 3 F.3d 986, 992 (7th Cir.1993) (*citing McMahon v. McDowell,* 794 F.2d 100 (3d Cir.), *cert. de-*

nied, 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986)). This court agrees with, and thus adopts, the rulings of other courts which have held that a beneficiary may not bring a claim for breach of fiduciary duty under § 1132(a)(1)(B). *Simmons v. Southern Bell Tel. & Tel. Co.,* 940 F.2d 614, 617 (11th Cir.1991) (*citing McMahon v. McDowell,* 794 F.2d 100, 111 (3d Cir.), *cert. denied* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986)); *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1162 n. 7 (3rd Cir.1990). Therefore, to the extent that plaintiff relies on § 1132(a)(1)(B) to support his claim for breach of "fiduciary duties," he has failed to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

### 29 U.S.C. § 1132(a)(2)

■ Section 1132(a)(2) allows beneficiaries of a plan, such as plaintiff, to seek relief under 29 U.S.C. § 1109. As explained previously, that section contemplates that actions for breach of fiduciary duty inure to the benefit of the plan, and not to individual beneficiaries. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Because Campbell seeks relief on his own behalf, and not for the plan itself, he does not properly state a claim for breach of fiduciary duty. Accordingly, to the extent that Campbell's claim for breach of "fiduciary duties" is brought under § 1132(a)(2), it is dismissed. Fed.R.Civ.P. 12(b)(6).

### 29 U.S.C. § 1132(a)(3)

■ Section 1132(a)(3) of Title 29 allows a beneficiary to bring a civil action to:

(A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of ERISA or the terms of the plan.

Plaintiff maintains that the Sixth Circuit's ruling in *Warren v. Society National Bank,* 905 F.2d 975 (6th Cir.), *cert. denied,* 500 U.S.

---

**18.** *See* footnote 8, *supra.*

**19.** Other sections within § 1132(a) may theoretically be applicable. However, the parties have chosen to narrow the field to these three.

952, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991)), as well as its holding in *Richards v. General Motors Corp.*, 991 F.2d 1227 (6th Cir.1993),[20] entitle him to a trial on the merits of his individual claim that defendants breached their "fiduciary duties." Response 2. Plaintiff reads *Warren* as standing for the proposition that an individual claim for breach of "fiduciary duties" may lie under § 1132(a)(3).

In *Warren* the court held that a fiduciary could be held liable to a participant under § 1132(a)(3) for contract violations where the injuries alleged are "direct injuries" resulting from the fiduciary violation. *Accord, Meade v. Pension Appeals and Review Committee*, 966 F.2d 190, 194 (6th Cir.1992). The fiduciary would not be liable for punitive damages or consequential injuries; however, he could be liable to a participant for direct injuries caused by the breach, as "other appropriate equitable relief" under § 1132(a)(3)(B)(i). *Id.* Thus, the *Warren* court's holding was focused on the damages recoverable under § 1132(a)(3) and not, as plaintiff would have it, the separate issue of whether an individual claim for breach of a statutorily defined fiduciary duty lies under § 1132(a)(3).

This court recognizes that some of the broad language from Justice Brennan's concurrence in *Massachusetts Life Ins. v. Russell* was cited by Judge Lively in the *Warren* court's plurality opinion. ("Therefore, construing sections 404(a) and 502(a)(3) together, a beneficiary may obtain "appropriate equitable relief" *for breach of fiduciary duties,* and such equitable remedies "include provision of monetary damages"). *Warren* at 979, *quoting Russell,* 473 U.S. at 154, n. 10, 105 S.Ct. at 3096, n. 10) (emphasis added)). However, this language was not necessary to the *Warren* court's narrow holding as

stated above. In addition, Judge Lively's opinion must be considered against the backdrop provided by Judge Nelson's concurrence. Judge Nelson viewed the issue before the court as a "narrow" one. *Warren,* 905 F.2d at 984. He stated that he concurred "in the judgment that the [defendant] failed to show that it was entitled to a dismissal of the case for failure of the amended complaint to state a claim upon which relief could be granted." *Id.* at 983.

This court reads *Warren* as standing for the limited proposition that 29 U.S.C. § 1132(a)(3) permits the recovery of compensatory damages to redress direct injury to a participant by a fiduciary that allegedly violated its "contractual duty" under the terms of the retirement plan and under the provisions of ERISA. *Id.* at 981.[21] Although closely worded, this interpretation of § 1132(a)(3) is very different from the one suggested by plaintiff (i.e. that a beneficiary may bring an individual action for breach of a "fiduciary duty" under section 1132(a)(3)).

For the same reasons, this court finds that this issue has not been (as plaintiff contends), previously decided by the court in *Richards v. General Motors Corp.*, 991 F.2d 1227 (6th Cir.1993). The holding in *Richards* was centered on whether a genuine factual issue existed on plaintiff's claim for *breach of contract* under § 1132(a)(3). To this end, the court stated that:

> We agree with the district court that a breach of a *contractual duty* is required for liability to attach under § 1132(a)(3). We cannot agree, however, that no such breach was possible as a matter of law based on the facts before the court.

*Id.* at 1231. The court went on to hold that, "[p]laintiff has raised a genuine issue of material fact under principles of agency law as

---

**20.** As stated, in *Richards v. General Motors Corp.,* 991 F.2d 1227 (6th Cir.1993), the Sixth Circuit affirmed in part and reversed in part this court's order granting G.M.'s motion for summary judgment on all counts as to plaintiff Richards. *See* footnote 1, *supra.*

**21.** As previously stated, the Supreme Court's recent decision in *Mertens* (i.e. that damages are not available under § 502(a)(3)) renders invalid the *Warren* court's ruling to the contrary. Prior to *Mertens,* the *Warren* decision had been uni-

formly rejected by other courts of appeal that considered it. *See e.g. Harsch v. Eisenberg,* 956 F.2d 651, 656 (7th Cir.), *cert. denied* — U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *Lee v. Burkhart,* 991 F.2d 1004, 1008 (2nd Cir.1993); *Novak v. Andersen Corp.,* 962 F.2d 757, 761 (8th Cir.1992); *Lafoy v. HMO Colo.,* 988 F.2d 97, 100 (10th Cir.1993). Now that the damages aspect of *Warren* has been repudiated, the question remains as to what—if anything—is left of that ruling.

to whether his transaction activity was tacitly authorized or approved by defendants; consequently, summary judgment is not proper at this point." *Id.* at 1236.[22]

Because neither *Warren* nor *Richards* resolves the issue of whether or not a beneficiary may bring an individual action for breach of *fiduciary duty* under § 1132(a)(3), this court must look elsewhere, beginning in the Sixth Circuit.

In *Bryant v. International Fruit Product Co.*, 886 F.2d 132 (6th Cir.1989), a beneficiary of an ERISA plan brought an individual claim against his employer on a "breach of fiduciary duty" theory. The court ruled that:

> Although [plaintiff's] complaint is very general and does not refer to specific statutory provisions, *suits under ERISA for breach of fiduciary duty arise under 29 U.S.C. § 1132(a)(2)*, which allows beneficiaries of a plan, like [plaintiff], to seek relief under 29 U.S.C. § 1109.

> .    .    .    .    .

> Because this action seeks individual recovery of benefits that were alleged to have been improperly denied, it does not state a claim for breach of fiduciary duty under ERISA. . . .

*Id.* at 135 (emphasis added).

Other courts have likewise held that, while an individual may bring a claim for breach of fiduciary duty under § 1132(a)(3), he must do so on behalf of the plan, and not himself individually. In *Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412 (9th Cir.1991), the plaintiffs sought to impose personal liability on the defendants for breach of fiduciary duty pursuant to either §§ 1109 and 1132(a)(2) or (like the plaintiff in the instant case) under § 1132(a)(3). The court rejected, pursuant to *Russell*, the claim as predicated on §§ 1109 and 1132(a)(2), for the reason that a beneficiary may not pursue an individual claim for breach of fiduciary duty

under § 1132(a)(2). With respect to the individual claim for breach of fiduciary duty under § 1132(a)(3), the court held:

> We have extended the reasoning of *Russell* to section 1132(a)(3), which allows recovery of 'other appropriate equitable relief.' *Sokol v. Bernstein*, 803 F.2d 532, 536 (9th Cir.1986). Section 1132(a)(3) also does not provide an action for an individual beneficiary to recover extra-contractual remedies. *Id.* [*see also Mertens* ]. *Under Russell and Sokol, the plaintiffs fail to present a fiduciary breach claim if the only remedy sought is for their own benefit, rather than for the benefit of the plan as a whole.*

*Id.* at 1418 (emphasis added). *See also Roth v. Sawyer–Cleator Lumber Company*, 16 F.3d 915, 920 n. 4 (8th Cir.1994) (distinguishing the Eighth Circuit from those circuits which have held that 29 U.S.C. § 1132(a)(3) gives plan participants a direct action against fiduciaries to recover damages that they personally suffered as a result of a breach of fiduciary duty); *Simmons v. Southern Bell Tel. & Tel., Co*, 940 F.2d 614, 617 (11th Cir.1991) (holding that § 1109, via § 1132(a)(2), provides the sole basis for a suit alleging breach of "fiduciary duties").

Although not argued by Campbell, recent authority from other circuits supports his position. In *Anweiler v. American Elec. Power Service Corp.*, 3 F.3d 986 (7th Cir. 1993), the Seventh Circuit held that an individual may seek equitable relief for a breach of fiduciary duty under § 1132(a)(3). Interestingly, the court had initially held that section 1132(a)(3) did *not* allow a plaintiff to obtain individualized relief for a breach of fiduciary duty, but subsequently changed its holding in light of the Supreme Court's decision is *Mertens*.[23] While acknowledging that *Mertens* did not compel such a result, the court reasoned that it encouraged it:

> The [*Mertens* ] Court limited its holding to the "narrow battleground" [of damages]

---

**22.** As stated in footnote 8, *supra*, the only issues under consideration for purposes of the motion to dismiss are those portions of the Amended Complaint which seek relief for breach of "Fiduciary Duties." See Amended Complaint ¶¶ 43, 44, 45, and 46. This court does not consider the propriety of the those sections of Count I of the Amended Complaint, which pertain solely to

plaintiff's "Breach of Contract" claim. *Id.* ¶¶ 37–42.

**23.** The court issued its original opinion on June 3, 1993, but later withdrew it in light of *Mertens*. The amended opinion was issued on August 25, 1993.

chosen by the parties and decided the issue of "what forms of relief are available" under section 1132(a)(3), not to whom the relief can go or whether a remedial wrong had even been alleged [*Mertens* ] —— U.S. at ——, 113 S.Ct. at 2067–68. *Nevertheless, Mertens clearly indicates the importance and availability of equitable relief. Moreover, the Secretary of Labor in an amicus curiae brief argues [that] Mertens dictates the availability of equitable relief to an individual under section 1132(a)(3) for a fiduciary's breach of duty.* Therefore, in light of *Mertens* and in deference to the Secretary's interpretation of the law which he is authorized to enforce, we hold that an individual may seek equitable relief from a breach of fiduciary duty under section 1132(a)(3).

*Id.* at 993 (emphasis added) (footnote omitted).

In an even more recent ruling, the Third Circuit in *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund,* 12 F.3d 1292 (3rd Cir.1993), similarly determined that "section 502(a)(3) (29 U.S.C. § 1132(a)(3)) authorizes the award of 'appropriate equitable relief' directly to a participant or beneficiary to 'redress' 'any act or practice which violates any provision of this title *including a breach of the statutorily created fiduciary duty of an administrator.*'" *Id.* at 1298 (emphasis added) (*quoting* Justice Brennan's concurrence in *Massachusetts Mutual Life v. Russell* ) (emphasis added). Unlike the *Anweiler* court, which relied on the Supreme Court's ruling in *Mertens* to arrive at the identical conclusion, the Third Circuit in *Bixler* adopted the reasoning of Justice Brennan's concurrence in *Massachusetts Mutual Life v. Russell.* Stating that it was "in full agreement that § 409 [29 U.S.C. § 1109] does not authorize recovery to an individual [for breach of fiduciary duty]," the court adopted Justice Brennan's theory that individual recovery for breach of fiduciary duty was nevertheless available elsewhere in ERISA, *viz.* in the "other appropriate equitable relief" clause of § 502(a)(3). *Id.* To this end, the court stated:

> Section 404(a) is the touchstone for understanding the scope and object of an

ERISA fiduciary's duties. The section is informative as to a trustee's accountability, for it establishes that a fiduciary "shall discharge his duties with respect to the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries." ERISA § 404(a), 29 U.S.C. § 1104(a). In carrying out those duties, the statute requires that a fiduciary satisfy a "prudent man" standard of care.

> These principles are given effect by § 502(a)(3) which, in the language of the statute, authorizes the award of "appropriate equitable relief" directly to a participant or beneficiary to redress an act or practice which violates the provisions of ERISA. *Of course, this relief is independent of that established in § 409, authorizing recovery for breach of fiduciary duty on behalf of the plan.* The question of whether a beneficiary has a direct cause of action for breach of fiduciary duty depends, then, upon construction of both § 502(a)(3), which, as seen above, generally authorizes individual civil actions for violations of the statute, and § 404(a), which defines the scope of an ERISA fiduciary's duties.

*Id.* at 1299 (emphasis added) (footnote omitted). The court again relied on Justice Brennan's concurrence in *Russell* for the proposition that "Congress intended by § 404(a) to incorporate the fiduciary standards of trust law into ERISA, and [that] it is black letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits." *Id.* (*quoting Russell,* 473 U.S. at 152–53, 105 S.Ct. at 3095–96). Construing § 502(a)(3) and § 404(a) together, the court ruled that a plaintiff may bring an individual action for breach of fiduciary duty against the trustees and administrators of an ERISA plan. *Id.* at 1299–1300.

Although mindful of the propinquity of *Anweiler* and *Bixler,* and respectful of the tribunals from which those decisions were issued, this court is simply not persuaded by either court's reasoning.

The *Anweiler* court initially rejected the notion that a beneficiary could assert an indi-

vidual claim for breach of fiduciary under § 502(a)(3), but then changed its position in light of *Mertens*. The court failed to mention which portion of *Mertens* compelled such a result, but merely stated that "*Mertens* clearly dictates the importance and availability of equitable relief [under § 502(a)(3) ]." *Anweiler*, 3 F.3d at 993. This court agrees that *Mertens* emphasized the availability of equitable relief under § 502(a)(3), but nevertheless fails to see the relatedness of this fact to the separate issue of whether or not an individual action for breach of "fiduciary duty" lies under § 502(a)(3). If anything, the *Mertens* Court made clear that its holding was limited to the relief available under § 502(a)(3) and that it was not deciding the "antecedent question" of whether a nonfiduciary can be sued under that section for participating in a breach of fiduciary duty:

> Thus, although we acknowledge the oddity of resolving a dispute over remedies where it is unclear that a remediable wrong has been alleged, we decide this case on the narrow battlefield [of damages available under 29 U.S.C. § 1132(a)(3) ] the parties have chosen. . . .

*Mertens*, —— U.S. at ——, 113 S.Ct. at 2067–68, 124 L.Ed.2d at 169. The only other support relied upon by the *Anweiler* court was that the Secretary of Labor stated that "*Mertens* dictates the availability of equitable relief to an individual under § 1132(a)(3) for a fiduciary's breach of duty." *Anweiler*, 3 F.3d at 993. The bases relied upon by the *Anweiler* court for its ruling that an individual action for breach of fiduciary duty lies under 1132(a)(3) (§ 502(a)(3) of ERISA) are, in this court's view, simply unpersuasive.

As noted, the Third Circuit in *Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3rd Cir.1993), travelled a different route than did the Seventh Circuit in *Anweiler*, but nevertheless arrived at the same destination. Although its decision was rendered post-*Mertens*, the *Bixler* court did not consider that Court's decision (nor *Anweiler* for that matter), but instead relied on Justice Brennan's concurrence in *Russell*, which was itself a primer on favoring legislative history and Congressional intent over express statutory language. The *Bixler* court stated that:

> Of course, this relief [i.e. individual relief to a beneficiary under § 502(a)(3) for breach of a § 404(a) fiduciary duty] is independent of that established in § 409, authorizing recovery for breach of fiduciary duty on behalf of the plan.

*Id.* at 1299.

This court fails to see the obviousness in the above statutory construction and thus respectfully rejects it in favor of a reading that appears, on the face of ERISA, to be manifest. Section 409 of ERISA (29 U.S.C. § 1109), is entitled "Liability for breach of fiduciary duty." By its express language, § 409 brings into its net fiduciaries who breach their § 404(a) (29 U.S.C. § 1104(a)) defined duties:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties *imposed upon fiduciaries by this subchapter* shall be personally liable to make good to such plan any losses to the plan resulting from each such breach. . . .

29 U.S.C. § 1109(a) (emphasis added).

■ Both § 409 and § 404(a) discuss fiduciary duties as being owed to the plan, and not to participants individually.[24] It is well-settled that under § 409 a participant may not seek individual relief for breach of fiduciary duty, but may sue only on behalf of the plan. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). It seems inconsistent to assume that Congress would have explicitly

---

24. It is curious that—via a misquote within the heart of its opinion—the *Bixler* court fails to mention this crucial point. That court quoted § 404(a) for the proposition that a fiduciary's duties are to be discharged "with respect to the interest of the *participants and beneficiaries*." *Bixler*, 12 F.3d at 1299 (emphasis added). A careful reading of § 404(a), however, reveals that while a fiduciary must perform his fiduciary duties "in the interest of the participants and beneficiaries," those duties must be discharged *"with respect to a plan."* Specifically, section 404(a) (29 U.S.C. § 1104(a)), which is entitled "Fiduciary duties," states in pertinent part:

(a) Prudent man standard of care. (1) . . . [A] fiduciary shall discharge his duties *with respect to a plan* solely in the interest of the participants and beneficiaries. . . .

delimited the parameters for enforcing breaches of statutorily defined fiduciary duties in one section of ERISA and intended, in another more general section, to expansively redefine those same boundaries. A more logical construction of the statute as a whole is that Congress created substantive duties in one section of ERISA (i.e. § 404(a); 29 U.S.C. § 1104(a)) and expressly provided the sole enforcement mechanism for breaches of those duties in another section (i.e. § 409; 29 U.S.C. § 1109). In other words, § 404(a) provides the right and § 409 (in conjunction with § 502(a)(2)) provides the sole and exclusive right to enforce that right. A different interpretation (i.e. one that allows individual actions for breach of fiduciary duty under § 502(a)(3)) would violate the basic canon of statutory construction of favoring, within the same statute, express statutory language over general. *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 228–29, 77 S.Ct. 787, 791–92, 1 L.Ed.2d 786 (1957) ("However inclusive may be the general language of a statute, it 'will not be held to apply to a matter specifically dealt with in another part of the same enactment.... Specific terms prevail over the general in the same or another statute which otherwise might be controlling.' *Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 [52 S.Ct. 322, 323, 76 L.Ed. 704 (1932) ]") (*citing Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102, 107, 64 S.Ct. 890, 894, 88 L.Ed. 1163 (1944)). In addition, construing § 502(a)(3) to allow individual actions for breach of fiduciary duty would render § 502(a)(2) and 1109(a) mere surplusage, as those sections would provide beneficiaries with only a subset of the relief they would otherwise be able to obtain under § 502(a)(3). Such a construction would thus violate yet another tenet of statutory construction, which is to give effect to every clause in a statute. *See United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute,' [ ] rather than to emasculate an entire section...."). The statute, read as a whole, plainly indicates that a breach of fiduciary claim puts money back into the plan, and not directly into the pockets of individual participants. *Roth v. Saw-yer–Cleator Lumber Company*, 16 F.3d 915, 920 n. 4 (8th Cir.1994). In order to get money out of the plan, a participant must make a claim for benefits. If such a claim is improperly denied, a participant may then bring suit under 29 U.S.C. § 1132(a)(1)(B).

This court is not insensitive to the argument that its construction of § 502(a)(3) seems to be itself inconsistent with "black letter trust law, [where] fiduciaries owed strict duties [which ran] directly to beneficiaries in the administration and payment of trust benefits." *Russell*, 473 U.S. at 152–53, 105 S.Ct. at 3095–96 (Justice Brennan concurring) (footnote omitted). Nevertheless, courts are compelled to adhere to the Supreme Court's admonitions that, "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it [and that] the presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Russell*, 473 U.S. at 147, 105 S.Ct. at 3092 (citations omitted). This court reads § 409 of ERISA (29 U.S.C. § 1109), in conjunction with § 502(a)(2) (29 U.S.C. § 1132(a)(2)), as providing the sole and exclusive basis for relief in a suit alleging breach of fiduciary duty under ERISA. Therefore, the court holds that a beneficiary may not seek individual relief—either equitable or legal—for a breach of fiduciary duty under § 502(a)(3) of ERISA (29 U.S.C. § 1132(a)(3)). Accordingly, to the extent Campbell's claim for breach of "fiduciary duties" is brought under that section, it is fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

## V. CONCLUSION

For the aforementioned reasons,

Plaintiffs' respective Motions in Support of Jury Demand are denied, and Defendants' Motion to Dismiss Count II of Plaintiff Campbell's Original Complaint is granted in part and denied in part.

IT IS SO ORDERED.